## TREME et al. v. THOMAS.

### No. 3940.

Court of Civil Appeals of Texas. Beaumont. Feb. 12, 1942.

Rehearing Denied March 25, 1942.

126

Sharfstein, Bell & Weinert, of Beaumont, Alf Roark, of Silsbee, Adams & Hillin, of Jasper, McFarlane & Dillard, of Houston, and Fortenberry & Fortenberry, of Beaumont, for appellants.

Jesse J. Lee, of Houston, Geo. P. Kirkpatrick and A. M. Huffman, both of Beaumont, Richardson & Lanier, of Jasper, and Williams, Lee, Kennerly & Cameron, of Houston, for appellee.

WALKER, Chief Justice.

George R. Thomas died testate in the city of Beaumont on the 16th day of July, 1938, leaving an estate of substantial value, which he devised to his nephews and nieces, and certain other beneficiaries named in his will. His will was duly probated by his independent executors, Dr. B. T. Speck and Otis Fullen, on the 15th day of August, 1938. On the 21st day of August, 1939, appellee, Mark Thomas, instituted this suit in the county court of Jasper county to set aside the order probating the will of George R. Thomas and to contest the will, naming as defendants the beneficiaries in the will and the independent executors; on the allegations of his petition he was not a blood relative of the deceased but claimed to be an adopted son, a status created by estoppel and not by the statutory method of adoption. The ground of contest against the will was want of testamentary capacity. Appellee lost his contest in county court, and duly perfected his appeal to the district court. On trial in district court, the issues made by the pleading and the evidence were submitted to the jury on the following special issues:

"Special Issue Number One. Do you find from a preponderance of the evidence that George R. Thomas and wife, Leona M. Thomas, took the plaintiff, Mark Thomas into their home with the intention and purpose of adopting him as their own child?

"Special Issue Number Two. Do you find from a preponderance of the evidence that the said George R. Thomas and wife, Leona M. Thomas, after receiving the plaintiff, Mark Thomas, into their home, treated and reared and cared for him as if he had been their child?

"Special Issue Number Three. Do you find from a preponderance of the evidence that the plaintiff, Mark Thomas, after he began living with the said George R. Thomas and wife, Leona M. Thomas, performed all the duties of a child toward them?

"Special Issue Number Four. Do you find from a preponderance of the evidence that Mark has suffered any detriment by reason of his performance, if any, of the duties of a child of G. R. Thomas?

"Special Issue No. Five. Do you find from a preponderance of the evidence that the natural parents of Mark relinquished their original rights of custody of him prior to his majority?

"Special Issue No. Six. From a preponderance of the evidence do you find that the condition of final settlement of Mark, if any, between the Thomases and Children's Home Finding Society was to the effect that the Thomases would tenderly and affectionately nurture and support Mark and give him a Christian education and a permanent home until maturity?

"Special Issue Number Seven. Do you find from a preponderance of the evidence that George R. Thomas at the time he executed the will in question, which is in evidence before you, did not have testamentary capacity?"

The jury returned the following answers to the issues submitted to the court's charge:

"Special Issue No. 1, we answer: Yes.
"Special Issue No. 2, we answer: Yes.
"Special Issue No. 3, we answer: Yes.
"Special Issue No. 4, we answer: No.
"Special Issue No. 5, we answer: Yes.
"Special Issue No. 6, we answer: No.
"Special Issue No. 7, we answer: He did not have."

Judgment was for appellee on the verdict, from which the independent executors prosecuted their appeal to this court without filing a bond. Mrs. B. A. Treme, one of the beneficiaries named in the will, prosecuted her appeal by duly filing an appeal bond. The other beneficiaries did not file appeal bonds.

We overrule appellee's motion that the judgment of the lower court be affirmed as to all the defendants below who did not file an appeal bond. The independent executors were the only necessary parties to the contest, and their appeal brought the record on all issues arising on the trial before us for review. Cheesborough v. Corbett, Tex.Civ.App., 155 S. W.2d 942. The motion to affirm as against Mrs. Treme, on the ground that she had not filed a brief, is overruled; we find her brief in the record.

Appellants' first point is that the lower court erred in refusing them a separate trial in limine on the issue of appellee's interest in the estate of George R. Thomas, and his qualification and right to institute and prosecute the contest against the order probating the will, and against the validity of the will. On the presentation of this motion to the court on the 21st day of April, 1941, the court required appellee to offer evidence on the issue of his interest in the estate; the hearing on this issue proceeded through the 23rd day of April, 1941. When appellee closed his evidence on this issue, appellants offered no rebutting evidence, and the following proceedings were had:

"By Mr. Huffman: I believe that is all we have with reference to the adoption feature.

"By the Court: All that you have?

"By Mr. Huffman: Yes, sir, everything with reference to the adoption feature.

"By the Court: Of any kind?

"By Mr. Huffman: Yes."

Following this appellants' counsel stated:

"By Mr. Weinert: Your Honor, at this time, upon the statement of counsel that this is all the testimony on the question in limine, we would like to make at this time one or two motions we have, depending, of course, on the court's ruling. First, for an instructed verdict at the conclusion of the testimony. We believe it is necessary to preserve and not waive our claim to our right of trial in limine or question of interest. Subject to the court's ruling on that, of course, we want to make a motion for the submission of interest to the jury at this time.

"By the Court: Your motion for instructed verdict is overruled.

"By Mr. Weinert: Now, I have a written motion.

"By the Court: The other is what? A motion to submit at this time the question of limine?

"By Mr. Weinert: Yes.

"By the Court: It is overruled."

The evidence introduced by appellee in limine consumes 311 pages of the statement of facts. After appellants' motions were overruled, the court received evidence for three days on the issue of the "mental capacity" of the deceased. On the hearing on the second phase of the case, no effort was made to confine the hearing to the issue of mental capacity, and in fact certain evidence was received on appellee's right to prosecute the suit; also, on the hearing in limine certain evidence was received on the issue of "mental capacity" of the deceased. Appellants have brought forward no assignment against the intermingling of the evidence on these two issues.

■ The effect of the court's order overruling appellee's motion on the issue in limine was to carry all questions through the case to judgment; all issues were submitted in the one charge given above. In our judgment Alexander v. State, Tex.Civ. App., 115 S.W.2d 1122, supports the ruling of the court. On the presentation of the motion for a separate trial, appellee was required by the court to introduce his evidence on his interest in the estate; he closed his evidence with the statement that he had introduced "everything with reference to the adoption feature." Appellants offered no evidence. The evidence offered, on the authorities hereinafter cited, clearly raised the issues submitted to the jury, on appellee's adoption by George R. Thomas. On authority of Alexander v. State, supra, appellants suffered no injury by the ruling of the court; in this connection we overrule the point that appellants' were injured by the evidence which showed them to be subjects of Germany.

■ We give appellants' second point: "The court erred in refusing to hold as a matter of law that plaintiff failed to show himself legally qualified by adoption or otherwise as a person sufficiently interested to be permitted to contest the will of George R. Thomas, deceased." There is no contention that George R. Thomas and his wife adopted appellee as their son in the manner provided by our adoption statutes, but appellee insists that he was adopted within the principles announced by the Supreme Court in Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72. A discussion of our law on the issue of adoption, as it ex-

isted prior to the decision of the Cubley case, would be nothing more that a review of the history of our law on that point. The doctrine of the Cubley case was extended and given application by the Commission of Appeals, speaking for the Supreme Court in Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 908, where the Cubley case was given the following construction: "The facts of this case clearly fall within the rule which our Supreme Court in Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72, 79, has declared to be the correct rule, namely: 'It seems to us that the rule is correctly stated by the annotator in the notes to the case of In re Taggart's Estate, (190 Cal. 493, 213 P. 504), 27 A.L.R. 1365, where the writer states: "The cases considering the matter are in substantial harmony in sustaining an estoppel in pais to preclude adoptive parents and their privies from asserting the invalidity of adoption proceedings, or, at least, the status of the adopted child, when, by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they by their representations induced such performance under the belief of the existence of the status of adopted child."'" On the principles announced by our Supreme Court in this case, the status of appellee as the adopted son of George R. Thomas was fully, clearly and accurately submitted to the jury by the court's charge.

■ The controlling point for our decision is whether the evidence raised the issues submitted by the charge. We rule this point in appellee's favor on the following summary of the facts: The earliest history we have in the record of Mark Thomas is April 20, 1908, when his mother, who apparently had been deserted by her husband, placed her four children, Mark, Dorothy, Norma and Veronica Sims in The Children's Home Finding Society of California. The document showing these facts gives the ages of the children as Mark, six years old on September 3, 1908; Dorothy, four years old on September 5, 1908; Norma, two years old on September 30, 1908, and Veronica one year old on March 13, 1908. Sometime thereafter the Children's Home Finding Society advertised Mark and Dorothy for adoption under the names of Tex and Nell in "The Delineator." By reason of this advertisement, Mr. and Mrs. George R. Thomas by the

following letter made application for "Ted" and "Nell" (Mark and Dorothy Sims) in November, 1908:

"Evadale, Texas.
"November 18th, 1908.
"Mr. H. W. Brayton,
"South Berkely, Cal.
"Dear Sir:
"In reply to yours of the 6th inst. will say we have carefully considered the responsibility of taking the children, and we think we are able to educate and care for them properly. * * *

"If they (Ted and Nell) are real bright, and ones you would choose for your own, you need have no fear of our doing but what is right by them.

"We are not rich, but own about nine hundred acres of land and eight city lots in Beaumont, Tex. Our home is on a six hundred acre tract two and one half miles from Evadale (Southeast). We raise stock mostly, and have some money out on interest. * * *

"We wish to be thoroughly satisfied with the children before we decide to adopt them, and would want at least six months.

"As I feel sure our recommendations·will meet requirement I hope to receive a favorable reply.

"I am sorry to have to turn in such a soiled application but accidents will happen when one is in a hurry. This is all on a two minute notice.

"Yours truly,
" Mrs. Geo. R. Thomas
"Evadale, Texas."

With this letter Mr. and Mrs. Thomas sent their application for the children, signed by them bearing even date with the letter. We quote as follows from this application:

"We hereby agree to receive such a child as we have described, and to give it good advantages, to send it to school as required by law, and to faithfuly provide for its well being, physical, mental and moral, in all respects as if it were our own child; and we further agree that we will report in writing to the superintendent, on blanks furnished by the Society, when requested, unless the child shall have been legally adopted by us. If, at any time, in the judgment of the Society, it should be for the best interest of the child, we will promptly return the child to the care of the Society at our expense, unless the child shall have been previously legally adopted. * * *

"Conditions
"Upon which children are placed in Families

"1. Applicants for children under the care of this Society are expected to be kind-hearted, humane, and up to the standard of approved American Citizenship. They must be in such financial circumstances and sustain such social relations as· to give a child good advantages and companion-ships, and an education suitable to its condition and state in life.

"2. Children are sent on trial a sufficient length of time to insure satisfaction, usually ninety days.

"3. If a child is to be removed at the end of ninety days, it may be done at the expense of the Society; before or after ninety days, the removal must be at the expense of the family. In case of removal at any time there must be given thirty day's notice by the family, either to the State Superintendent or to the agent through whom the child was placed. These conditions must be complied with, unless there shall be a special contract made in writing, and signed by both parties, copies of which shall be in the hands of both parties.

"4. In no case, for any reason, is a child to be given away or transferred to a third party without the written consent and approval of the Society.

"5. There are two conditions, one of which must be chosen on final settlement of a child: (A) Legal adoption. (B) Special contract, which includes conditions satisfactory to the association that the child will be tenderly and affectionately nurtured and supported, and given a Christian education, and a permanent home until maturity."

It is not controverted that, after the signing of this application, Mark Sims and his sister Dorothy were sent in the care of a nurse from South Berkley, California, to Evadale, Texas, and were delivered by the nurse to Mr. and Mrs. George R. Thomas; that Dorothy contracted diphtheria on the journey, and died within a few days after reaching Evadale. Mark Sims, who from the time he was received by George R. Thomas and wife, up to the present time, has gone under the name of Mark Thomas, and was kept by Mr. and Mrs. George R. Thomas in their home until he reached the age of maturity. From the time he was received by the Thomases until the present time, Mark has been known as Mark

Thomas; he performed his duties in the Thomas home as well as any son of their own blood would have done; he attended school and went to church and Sunday school, and was always known in all of these institutions as Mark Thomas; he worked in the home and on the farm, and in the woods with the livestock like any natural son would have done; the Thomases' received the benefits of his love and affection and his work and labor during all of this time. There is nothing in the record to show that George R. Thomas ever recognized or treated Mark other than he would have treated a son born to him, and there is nothing in the record to show that Mark ever treated George R. Thomas other than as a dutiful and obedient child would have treated his father. The undisputed evidence shows that George R. Thomas, at all times up to the time of his death, treated Mark Thomas as if he were his only child. After Mark established his own home, George R. Thomas made him regular visits and carried him farm produce for the use of his own family; he gave Mark a home in the City of Beaumont in which he lives. After he became of age and had left the roof of his foster father, Mark frequently visited back home, and continued to show George R. Thomas all of the love and respect and kindness and consideration that a son would show his natural parent.

On the day, or the day following, that the nurse delivered Mark and his sister to Mr. and Mrs. Thomas, J. Reese had the following conversation with Mr. Thomas: "He said, 'how are you Mr. Reese?' I said, 'I am getting along fairly well.' I said, 'How are you?' He said, 'I am papa this morning.' I said: 'Is that right. How come that?' He said: 'I got an adopted boy and girl, and the girl come in very sick.'"

The testimony of Uncle Tine Withers with reference to the adoption feature is as follows:

"Q. Did you make any inquiry from Mr. and Mrs. Thomas about the children or did they say anything about why they were brought there? A. Not that day.

"Q. When did they say anything about it? A. Well, it was some little time after that, after the girl had died. I was at Mr. Thomas' and asked him about them.

"Q. What did they say about it? A. His wife was very dissatisfied about losing the little girl.

"Q. Dissatisfied about losing the little girl? A. Yes; she was dissatisfied about losing the little girl; she was hurt over it and said they was going to adopt the boy.

"Q. And that was Mark? A. Yes, sir.

"Q. How old did Mark seem to be at that time? A. I don't know, he was two or three or four years old; he was just a little fellow. I never asked anything about his age.

"Q. Did you ever hear them say anything after that about adopting him? A. Yes, sir, several times.

"Q. What did they say about it? A. He said he was going to adopt him. A few years after that he told me he had adopted him.

"Q. He had adopted him? A. Yes; I don't know how long it was."

In 1924, Mrs. Thomas sued Mr. George R. Thomas for a divorce. In her petition she alleged: "Plaintiff would further represent to the court that there was a young boy living with plaintiff and defendant during the time they lived together; that it was the intention of plaintiff and defendant to adopt the boy." In his answer he alleged: "Defendant further says that he and plaintiff did take Mark Sims, an orphan boy about four years of age into their home, and it was the purpose of both plaintiff and the defendant to adopt the said child, and that they have raised said child to the age of 22 years."

On the 6th day of December, 1911, W. M. Lewis, State Superintendent of "Children's Home Society of California," notified Mr. and Mrs. George R. Thomas that the "Children's Home Finding Society" had gone out of existence and that the proper supervision of the children, placed by that Society, had been referred to it. Mr. and Mrs. Thomas were requested to make a report on Mark's condition.

The evidence as summarized above clearly raised every issue submitted by the court's charge, and satisfactorily supports the jury's verdict.

Appellants complain that the court erred in excluding certain correspondence between Mr. and Mrs. Thomas and Children's Home Society of California, on the status of the boy Mark in their home. The excluded correspondence began with a letter dated March 5, 1918, and continued until September 14, 1923. The effect of these letters was to deny that Mr. and Mrs. Thomas had taken the boy for the purpose

of adopting him. We think this correspondence was properly excluded. The first of these letters was written nearly ten years after Mr. and Mrs. Thomas had taken Mark into their home. This correspondence was too remote, and did not form a part of the res gestae of the adoption. Mark's status in the home of Mr. and Mrs. Thomas was fixed by the contract under which he was received by them in retaining him in their home. On the law announced by our Supreme Court in Jones v. Guy, supra, Mark's status was fixed as that of an adopted son long prior to 1918.

It is our conclusion, on the law announced by our Supreme Court in the authorities cited, that Mark, as a matter of law is the adopted son of Mr. and Mrs. George R. Thomas, deceased.

Supplementing our argument under appellants' first point, this conclusion makes immaterial the ruling of the trial court in refusing to render judgment in limine on the issue of Mark Thomas' right to contest the order probating the will of George R. Thomas, deceased.

The court correctly overruled appellants' special exceptions to appellee's petition wherein he plead the contract of adoption.

Without detailing the facts, the evidence supports the jury's finding on the issue of "mental capacity" of the deceased.

Appellants' points not discussed are necessarily ruled by what we have said above.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

Appellants assign error against our construction of their brief that they had "brought forward no assignment against the intermingling of the evidence" on the issue of their right to a hearing in limine of appellee's right to prosecute this suit, and of the issue of mental capacity. Their proposition is: "Appellant is frankly at a loss to understand how the court could fail to read the assignments of error Nos. 16 to 35 inclusive, appearing at pp. 147 to 154 inclusive of the transcript; complaining of the intermingling of evidence in twelve separate instances of testimony by the first twelve witnesses on plaintiff's supposed evidence in limine. Examination of appellant Fullen's original brief will show that these assignments of error were listed as germane to the First point with transcript references at page 3 of such brief and were discussed with reference to some of the particular witnesses at pages 17 and 18 of the brief. The court will see that the trial court even specifically recognized and granted a general objection, order overruling same, and exception to all of such intermingling to avoid the necessity of continued re-presentation thereof which should be recognized by this appellate court as fully preserving the point." We give appellants' first point referred to in this proposition: "The court erred in refusing to accord defendants the privilege of separate trial in limine of the issue of interest and qualification of plaintiff." Appellants make the statement that their point One is germane to twenty-eight assignments of error, identified by number and by reference to certain pages in the transcript. Appellants' point One does not present error against the intermingling of the evidence on the two issues. The filing date on their brief shows, as they insist, that it was filed "after the effectiveness of the Texas Rules of Civil Procedure wherein it is provided by Rule 418(b) that assignments of error need not be copied in the brief and may be cited by reference only. We likewise assume that the court recognizes Rule 374 providing that the motion for new trial shall constitute the assignments of error on appeal." But the new rules do not relieve the appellant of the burden of briefing his assignments; to have advantage of his assignments of error, the appellant must brief them. The points upon which the appeal is predicated, within rule 418(b), must be "germane to one or more assignments of error"; to be reviewed, the assignment of error must be advanced in support of a point of error, and must be germane to the point of error. Appellants' first point was not germane to any assignment against the intermingling of the evidence on the issue of "interest" and "mental capacity."

Appellants ask us "to state" our reason "for destroying the properly raised assignments of error," referring to its assignments against the intermingling of the testimony in limine. The reason is simple; appellants made no point germane

132

to these assignments of error; the assignments were not brought forward; not having been brought forward by germane points, they were not briefed, and therefore, under briefing rules, they were waived. Rule 418(b) expressly provides: "Assignments of error need not be copied in the brief, if they otherwise appear in the record, and may be cited by reference only." But this rule does not give the appellant the right to a review of assignments not brought forward in support of germane points of error.

Appellants also make the point "that no single portion of a right to trial in limine was granted" by the trial court. The statement in our original opinion denies that contention. These proceedings support our conclusion that "the court required appellee to offer evidence of his interest in the estate." In this connection, we say, except as reflected by this statement, we find no order in the record requiring appellee to offer first his evidence on the issue of his interest.

█ Appellants insist that Alexander v. State, which we cite in our original opinion in support of our conclusion overruling their assignments on the right of trial in limine, was overruled by Newlin v. Smith, 136 Tex. 260, 150 S.W.2d 233. Alexander v. State is reported in 115 S.W.2d 1122; if Newlin v. Smith overruled Alexander v. State, it would have been easy for the Supreme Court to say so. The point is also made that Alexander v. State is in conflict with Abrams v. Ross' Estate, Tex.Com. App., 250 S.W. 1019, and Newton v. Newton, 61 Tex. 511. The Supreme Court refused a writ of error in Alexander v. State, as against all its prior holdings. The conflict, if it exists, must be resolved in favor of the last expression of the law by the Supreme Court, but we find no conflict.

But for the holding of our Supreme Court in Cubley v. Barbee, and Jones v. Guy, cited in our original opinion, we would concur with appellants in their propositions of law, stating appellee's rights on the issue of adoption. Our personal view of the law on this issue was clearly stated by us in Boudreaux v. Texas & N. O. R. R. Co., Tex.Civ.App., 78 S.W. 641. But our construction of Cubley v. Barbee in that case was affirmatively denied by our Supreme Court in Jones v. Guy. This court is not a court of last resort. To the best of our ability we have applied to the case at bar the doctrine of Jones v. Guy.

█ Appellants also advance the following proposition: "The court has admitted that no effort at statutory adoption has been made, which was the sole basis of decision in Cubley v. Barbee. The court has manufactured a hybrid relation containing neither unconditional promise nor the elements of estoppel, whose appearance, unrepudiated by the Supreme Court, on the face of the reports of this State will rise like an evil ghost to haunt every domestic relations lawyer with the intangible and vague character thereof from now until such time as the courts of this State, overburdened with pseudo-adoptions, resort to the rule upon which the Missouri courts have retreated in holding that the claimants must prove their cases beyond a reasonable doubt. We say frankly that the general acceptance of a 'beyond the reasonable doubt' test by all other states permitting parole proof of adoptions is a freakish creation in the civil law, but it is no more ridiculous than the continued extension of a policy violative of legislative enactment which is inevitably calculated to flood our courts with claims of adoption in every instance where humanitarian instincts may lead individuals to extend succor and shelter to those unfortunate children deprived of natural parenthood. What a penalty this court seeks to impose on charity." Our Supreme Court had before it, in writing Cubley v. Barbee and Jones v. Guy, the Missouri cases, and the cases from the other states, which, appellants say, accept the "beyond a reasonable doubt test." We do not find in the holdings of our Supreme Court a scintilla of a suggestion that appellee rested under this burden; however, the "beyond a reasonable doubt test" has no application to this case, if we are correct in our construction of the evidence that appellee sustained, as a matter of law, his claim of adoption. Of course, our conclusion of law on this point rests on our construction of the law as announced in Jones v. Guy.

We quote the following additional proposition from appellants' motion for rehearing: "We would respectfully suggest to the court that it is time for some of our appellate judges, in the continued loose quotations of an unknown A. L. R. annotator, to inspect the original annotation of In Re Taggert now quoted for the third time in this State in the opinion in this case." In our opinion, we do not cite the annotation from A. L. R. in support of our conclusion

of law; we simply quoted from the opinion of the Commission of Appeals the annotator's proposition of law, approved as the law of this state by our Supreme Court.·

■■■■ Appellants direct our attention "to the fact of inconsistency of the court's ruling in two evidence questions of identical nature which the court has in one instance determined one way and then reversed itself in order to hold in both instances in favor of appellee's position. The court has said that the correspondence between the parties to the original custody agreement was remote for the period from 1918 to 1923, thus sustaining the exclusion of a series of letters between the orphanage and Mr. and Mrs. Thomas. At the same time it has admitted portions of the divorce suit between Thomas and wife in the year 1924, over the same objection of remoteness made by appellants, along with many other valid objections thereto, on which the court has not seen fit to rule. If the court's declaration that Mark's status was fixed by the so-called contract on which he was received long prior to 1918 is true, on what theory can it condone the admission of the divorce proceedings in 1924? This is playing fast and loose with principles of evidence which should apply to both parties alike." The excluded correspondence, and the pleadings excepted to, were written statements by interested parties. We excluded the correspondence on the theory that it was too remote; after a great lapse of time the parties did not have the right to make evidence for themselves by statements contradicting and in repudiation of a status which they had brought about by their own acts. We overruled the exceptions to the pleadings assigned as error on the ground that they were admissions against interest; we know of no rule barring admissions against interest on the ground that they are too remote. From birth to death one must face the consequences of his admissions against interest; it does not destroy their evidentiary weight; this is the general rule of evidence.

■■■■ Appellants contend that the jury's answer to special issue No. 4, given in the original opinion, that appellee had not suffered detriment by reason of his performance of the duties of a child, entitled them to judgment. No such proposition of law has been announced by our Supreme Court. Where an abandoned child has been taken from an orphan's home and given a good home, raised in love and tenderly nurtured, as was appellee in the case at bar, a jury could not find that he had suffered detriment by reason of the performance of his duties to those who had him in their keeping.

■■■■ At appellants' request, we find that their plea in abatement for separate trial in limine was filed prior to the answer to the merits in the county court. The transcript contains the order of the trial court, made on the 21st day of April, 1941, at the commencement of the trial, overruling and denying without qualification appellants' motion for a separate trial. Since in our original opinion we find that "on the hearing in limine certain evidence was received on the 'mental capacity of the deceased,'" it would serve no useful purpose to give the names of these witnesses, and appellants not having briefed their exceptions to the intermingling of the evidence on the issues of interest and mental capacity, it would serve no useful purpose to set out the testimony of the witnesses on these issues, we sustain appellants' assignments—appellee concurring—that: (1) The lower court erred in taxing costs against the executors; our order is that the executors be relieved of all costs, and that the costs incurred by them be taxed against the estate; (2) the lower court erred in ordering execution to issue out of the district court for the enforcement of its judgment against the executors; our order is that the judgment of the district court be certified to the county court for the due observance of the county court in the administration of the estate of George R. Thomas, deceased; (3) since the executors were the only necessary parties to appellee's contest, the judgment of the lower court on the issue of costs is reformed further to the extent that the other appellants are taxed only with the costs incurred by them in their personal relation to the contest.

The original opinion has been corrected to show that George R. Thomas died on the 16th day of July, 1938.

Except to the extent discussed, appellants' request for additional conclusions of fact and law is overruled. The motion for rehearing is granted to the extent of taxing against the estate the costs incurred by the executors in defending the probate of the will, and in directing that the judgment of the district court be certified to the probate court for observation, and in all other respects denied.